**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-03641-NYW

DEBRANNE MARIE JACOBY,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Magistrate Judge Nina Y. Wang

This civil action arises under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, for review of the Commissioner of Social Security Administration's ("Commissioner" or "Defendant") final decision denying Plaintiff Debranne Jacoby's ("Plaintiff" or "Ms. Jacoby") application for Disability Insurance Benefits ("DIB"). Pursuant to the Parties' consent [#13], this civil action was assigned to this Magistrate Judge for a decision on the merits. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully **AFFIRMS** the Commissioner's decision.

**BACKGROUND**

Ms. Jacoby, born April 2, 1958, alleges she became disabled on November 28, 2014, at 56 years-of-age, due to two head injuries, short term memory loss, carpel tunnel, lack of focus, spine

injury, neck injury, constant migraines, and arthritis in left hip.[1]  *See* [#11-3 at 68; #11-6 at 184].[2] She alleged that she ceased working as a bookkeeper because of a lack of concentration and focus, her difficulty with paperwork, and her inability to perform the essential tasks associated with the job.  [#11-6 at 191-92].  Ms. Jacoby further alleged that she had slight difficulties with most daily activities, and that her mental impairments impaired her ability to follow instructions or conversations, stay focused, and complete tasks.  [*Id.* at 192-99, 205].

Given her various ailments, Plaintiff filed her applications for DIB on January 31, 2017. *See* [#11-3 at 66].   The Social Security Administration denied Plaintiff's application administratively on May 31, 2017.  *See* [*id.*].  Ms. Jacoby submitted a request for a hearing before an Administrative Law Judge ("ALJ"), which ALJ Lynn Ginsberg (the "ALJ") held on October 10, 2018, after granting Plaintiff a continuance on September 24, 2018 to undergo a neuropsychological consultative exam.  *See* [#11-2 at 30-41, 46].  The ALJ received testimony from the Plaintiff and Vocational Expert D.T. North ("the VE") at the hearing.  *See* [*id.* at 49, 57].

Ms. Jacoby testified at the hearing as to her previous work as a bookkeeper for a business she co-owned with her ex-husband.  *See* [*id.* at 50-57].  She explained that her primary role was managing the company and handling the finances and accounts receivable, though she sometimes performed manual labor.  *See* [*id.* at 50-57, 59].

---

[1] Because Ms. Jacoby's appeal focuses on her alleged mental impairments, the court limits its discussion of the medical record to those alleged impairments.

[2] When citing to the Administrative Record, the court utilizes the docket number assigned by the Electronic Court Filing ("ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page.  For all other documents the court cites to the document and page number generated by the ECF system.

The VE then testified at the hearing and began by classifying Ms. Jacoby's past relevant work experience as a bookkeeper, a sedentary job with a specific vocational preparation ("SVP")[3] of 6, as well as composite job of bookkeeper/carpenter, a medium exertion job with an SVP of 7. *See* [*id.* at 60-61]. The ALJ then asked the VE a series of hypotheticals. First, the VE testified that an individual subject to mild physical and postural limitations could perform Ms. Jacoby's prior work as a bookkeeper. *See* [*id.* at 61-62]. The same was true even if that individual could only interact with the public, coworkers, and supervisors occasionally. *See* [*id.* at 62-63]. Third, the VE testified that such an individual, if further limited to unskilled work at all reasoning levels, could not perform Ms. Jacoby's past work as a bookkeeper, nor could such an individual perform any work. *See* [*id.* at 63]. When asked by Ms. Jacoby's counsel if any jobs existed for an employee who missed two days of work per month, the VE testified that such an individual could likely still perform the work of a bookkeeper. [*Id.* at 64].

On January 13, 2019, the ALJ issued a decision denying Plaintiff's application for DIB. *See* [*id.* at 27]. The ALJ concluded that Ms. Jacoby retained the residual functional capacity ("RFC") through the date of the ALJ's opinion[4] to perform her past work as a bookkeeper, thereby finding Ms. Jacoby not disabled under the Act. *See* [*id.* at 26-27]. Plaintiff requested the Appeals Council review of the ALJ's decision, which the Appeals Council denied, rendering the ALJ's

---

[3] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991)); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003).

[4] The ALJ concluded that Ms. Jacoby's date last insured likely extended beyond December 31, 2016, and so the ALJ considered whether Ms. Jacoby was disabled through the date the ALJ issued her decision on January 13, 2019. [#11-2 at 20].

decision the final decision of the Commissioner.  *See* [*id.* at 1-3].  Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on December 23, 2019, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3) in this action.

## LEGAL STANDARDS

An individual is eligible for DIB benefits under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act.  42 U.S.C. § 423(a)(1).  An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."  *Id.* § 423(d)(2)(A).  The disabling impairment must last, or be expected to last, for at least 12 consecutive months.  *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).  And when a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The burden is on the claimant to prove she was disabled prior to her date last insured.  *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform his past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020) (internal quotation marks omitted); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

On appeal, Ms. Jacoby challenges the ALJ's RFC assessment in two ways. First, she argues that the ALJ did not consider the longitudinal record regarding Ms. Jacoby's mental

impairments and did not consider the effects of those mental impairments in rendering the RFC assessment. Second, she argues the ALJ did not have valid reasons for assigning little weight to Edward Cotgageorge, Ph.D.'s ("Dr. Cotgageorge") neuropsychological evaluation of Ms. Jacoby. For the following reasons, I respectfully disagree with Ms. Jacoby.

**I.      The RFC Assessment**

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545; SSR 83-10. "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")). The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

The ALJ determined that Ms. Jacoby retained the RFC to perform light work, subject to certain physical restrictions, that "requires no more than occasional interact[ion] with coworkers, supervisors and the public." [#11-2 at 22]. Ms. Jacoby argues that the ALJ erred in rendering this RFC assessment because the ALJ did not consider significant, probative evidence of Ms. Jacoby's

6

mental impairments, and the ALJ failed to properly weigh Dr. Cotgageorge's neuropsychological examination. *See* [#14; #18]. I consider each in turn.

### A.     Mental Impairments

As mentioned, the ALJ must consider all medically determinable impairments, whether severe or not, when assessing a claimant's RFC. *See Ray*, 657 F. App'x at 734. In doing so, the ALJ must explain how evidence supports her specific functionality findings. *See Hendron*, 767 F.3d at 954. And the ALJ may not simply rely on her step two conclusions that ailments are non-severe to disregard those ailments when formulating a claimant's RFC. *Wells*, 727 F.3d at 1068-69. If, however, substantial evidence supports the RFC assessment, the court will not second-guess that determination. *See Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007).

The ALJ determined at step two that Ms. Jacoby suffered from the following severe mental impairments: bipolar disorder, post-traumatic stress disorder ("PTSD"), and depression. [#11-2 at 20]. Despite noting evidence of multiple traumatic brain injuries, the ALJ concluded the medical evidence did not establish a "severe medically determinable organic brain disorder." [*Id.* at 20-21]. Proceeding with her sequential analysis, the ALJ concluded at step three that Ms. Jacoby's mental impairments did not meet the requirements of listings 12.04 and 12.15 because Ms. Jacoby had only mild limitations in most mental functioning, with moderate limitations interacting with others; nor did Ms. Jacoby meet listing 11.18 regarding traumatic brain injuries because the medical evidence and medical source opinions did not reveal such a diagnosis. *See* [*id.* at 21]. The ALJ acknowledged that her step two and three findings regarding Ms. Jacoby's mental impairments were limited to the severity of those mental impairments and did not replace a more thorough mental RFC assessment. [*Id.* at 21-22].

In assessing Plaintiff's RFC, the ALJ began with a discussion of Ms. Jacoby's complaints regarding her mental impairments. *See* [*id.* at 22]. The ALJ recounted Ms. Jacoby's "remote history of a traumatic brain injury . . . 2009 or 2010," as well as a second brain injury in or about 2011. *See* [*id.* at 22-23]. The ALJ continued that, despite worsening headaches and symptoms associated with depression and PTSD, Ms. Jacoby "continued working as a self-employed bookkeeper . . . after the earlier head injuries." [*Id.* at 23].

The ALJ ultimately concluded that Ms. Jacoby's subjective complaints were not entirely consistent with the medical record. [*Id.*]. This was because:

- Social Security Administration psychological consultant Stacy Koutrakos, Psy.D. found no evidence of any severe mental impairment,
- 2014 CT scans returned negative for a traumatic brain injury,
- Ms. Jacoby routinely denied symptoms associated with a traumatic brain injury,
- February 2017 examination findings revealed no neurological deficits,
- There was no objective evidence of symptoms associated with head injuries,
- Dr. Cotgageorge's neuropsychological assessment revealed some mild neurological deficits but was otherwise inconsistent with his other findings, and
- Kathy Bird, MA, LPC's ("Ms. Bird") treatment records did not support more severe mental restrictions.

[*Id.* at 23-25].

Ms. Jacoby argues the ALJ utterly ignored probative evidence supporting Ms. Jacoby's claimed mental impairments, such as her short-term memory loss. *See* [#14 at 5-8; #18]. Specifically, she contends the ALJ failed to consider treatment notes from Ruth Knight, PA ("PA Knight") acknowledging short-term memory issues; treatment notes from neurologist Nicole Jo

8

Licking, D.O. noting Ms. Jacoby's short-term memory deficiencies; Ms. Bird's statement that Ms. Jacoby suffered short-term memory deficiencies after a 2014 motor vehicle accident; Dr. Cotgageorge's examination findings; and Ms. Jacoby's own subjective complaints of short-term memory issues. [#14 at 5-8]. According to Ms. Jacoby, the ALJ's failure in this regard led to the erroneous conclusion that Ms. Jacoby's mental impairments caused only mild to moderate limitations and precludes the court from undertaking meaningful judicial review of the ALJ's decision. *See* [*id.* at 8-11]. I respectfully disagree.

It is axiomatic that an ALJ must discuss the evidence supporting her decision, "the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). As the Commissioner correctly argues, the ALJ did consider much of the evidence Plaintiff now contends was missing from the ALJ's decision. *See* [#11-2 at 22-25]. That is, the ALJ acknowledged Ms. Jacoby's complaints of a remote history of a traumatic brain injury and cited to the medical record containing the 2015 treatment notes from PA Knight; the ALJ considered treatment notes from Dr. Licking and concluded they established that Botox injections improved Ms. Jacoby's constant headaches and migraines; the ALJ considered both Ms. Bird's and Dr. Cotgageorge's assessments of Plaintiff's mental functionality and found both unpersuasive; and the ALJ likewise considered, but found unpersuasive, Ms. Jacoby's statements[5] regarding her mental impairments. *See* [#11-2 at 22-25]. In doing so, the ALJ discussed the evidence she relied on as well as the evidence she rejected. Nothing more is required. *See Hendron*, 767 F.3d at 954.

---

[5] Ms. Jacoby does not explicitly challenge the ALJ's consideration of Ms. Jacoby's subjective complaints, but the court notes that the ALJ's decision makes clear the basis for finding those complaints unpersuasive. *See Watts v. Berryhill*, 705 F. App'x 759, 763 (10th Cir. 2017) (explaining that the court will uphold an ALJ's consideration of a claimant's subjective complaints if affirmative linked to substantial evidence).

To the extent Ms. Jacoby contends that the ALJ was required to discuss every piece of evidence documenting Ms. Jacoby's alleged short-term memory deficiencies, such an undertaking is not required. Indeed, there is no requirement that the ALJ identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 947, 949. Further, any error in this regard is harmless. *See Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (explaining that courts "may employ a harmless-error analysis sua sponte on appeal when . . . the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings."). This is because Ms. Jacoby must do more than establish the presence of a condition; rather, she must demonstrate that the condition poses limitations on her ability to perform work-related tasks. *See Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016) ("Diagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations."). This she did not do.[6] *See Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) ("[I]n cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." (internal quotations omitted)). Even still, the ALJ explained that the medical evidence did not support the greater mental limitations Ms. Jacoby alleged.

---

[6] Indeed, the court's independent review of the medical evidence reveals that Ms. Jacoby sought treatment most often for her various physical ailments that are not at issue in this appeal, or for her constant headaches/migraines. *See generally* [#11-7 through #11-16].

While the record may contain evidence of greater limitations than the ALJ found, it is the ALJ's, not the court's, responsibility to resolve those inconsistencies. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("In short, the record contains support for both the notion that Mr. Allman has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe. The ALJ was entitled to resolve such evidentiary conflicts and did so."). To find otherwise would require this court to reweigh the evidence, which it may not do, *see Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000), and the court likewise cannot "displace the agency's choice between two fairly conflicting views," *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004) (brackets omitted). Thus, I conclude that the ALJ adequately considered Ms. Jacoby's mental impairments when assessing Ms. Jacoby's RFC.

### B.      Weighing the Medical Opinions

In assessing a claimant's RFC, the ALJ must also address medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015). The Social Security regulations afford a treating source opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2);[7] *cf. Garcia v. Colvin*, 219 F. Supp. 3d 1063, 1071 (D. Colo. 2016) ("The distinction between *not inconsistent* and *consistent* is significant. The treating source opinions should not be accorded controlling weight if they contradict other substantial evidence in the record, but they do not necessarily have to reach the exact same conclusions." (emphasis in original)). Generally, the opinion of an examining source is entitled to more weight than the opinion of a non-examining source. *See Garrison v. Colvin*, 759 F.3d

---

[7] Because Ms. Jacoby filed her application for DIB on January 31, 2017, 20 C.F.R. § 404.1527 governed the ALJ's analysis of the medical source opinions. 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

11

995, 1012 (9th Cir. 2014); 20 C.F.R. § 404.1527(c)(1). Indeed, the opinion of a treating or examining source is in no way "dismissable," *see Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012), and may be dismissed or discounted only upon an examination of the factors provided in the regulations and "specific, legitimate reasons for rejecting it." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

But even if the ALJ does not afford the treating source opinion controlling weight, the ALJ owes that opinion deference and must weigh that opinion using all the factors provided in 20 C.F.R. § 404.1527(c)(1)-(6). *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); SSR 96-2p, 1996 WL 374188, at *4. These factors include:

1. the length of the treatment relationship and the frequency of examination;

2. the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

3. the degree to which the physician's opinion is supported by relevant evidence;

4. consistency between the opinion and the record as a whole;

5. whether or not the physician is a specialist in the area upon which an opinion is rendered; and

6. other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotation marks omitted). Ultimately, the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the treating source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted); *accord Golden-Schubert v. Comm'r, Soc. Sec. Admin.*, 773 F. App'x 1042, 1050 (10th Cir. 2019) ("An ALJ is not required to expressly discuss each factor in deciding what weight to give a medical opinion.").

Ms. Jacoby argues that the ALJ erroneously disregarded Dr. Cotgageorge's neuropsychological examination. [#14 at 12; #18]. According to Ms. Jacoby, Dr. Cotgageorge opined to greater mental limitations than found by the ALJ, and the ALJ failed to provide legitimate reasons for discrediting these limitations. *See* [#14 at 12-20; #18]. The Commissioner responds that the ALJ adequately explained her reasons for providing little weight to Dr. Cotgageorge's opinions. *See* [#17 at 10-11]. I respectfully agree.

On September 28, 2018, Dr. Cotgageorge performed a neuropsychological assessment of Ms. Jacoby. [#11-16 at 913]. Dr. Cotgageorge recounted Plaintiff's history of complaints regarding her mental impairments. *See* [*id.* at 913-14, 917]. Upon conducting a mental status examination, Dr. Cotgageorge indicated that Ms. Jacoby was alert and oriented, but presented anxious and depressed, which caused Ms. Jacoby to appear baffled and confused. [*Id.* at 917]. Dr. Cotgageorge further noted that Ms. Jacoby's thought process was intact and that her "[i]nconsistent performance during the testing . . . likely [] underrepresent[s] her actual abilities." [*Id.* at 918-19]. Dr. Cotgageorge summarized his findings as mild limitations with verbal and visual reasoning, verbal memory, and dominant motor and sensory, with abnormally low functionality with visual memory. *See* [*id.* at 914, 919-21]. Dr. Cotgageorge opined that Ms. Jacoby displayed lower functionality than expected and diagnosed Plaintiff with PTSD and mild cognitive impairment. *See* [*id.* at 914-15, 923-24].

Dr. Cotgageorge also issued a Mental Residual Functional Capacity Form on October 5, 2018. [*Id.* at 926]. He opined that Ms. Jacoby's mental impairments precluded performance for (1) 20% or more of an 8-hour workday the ability to follow detailed instructions, complete a normal workday and workweek without psychological interruptions and maintain a consistent pace, or respond appropriately to changes in work environment; (2) 15% of an 8-hour workday the

ability to carry out detailed instructions, maintain prolonged attention and concentration, timely perform tasks and maintain attendance, or travel to unfamiliar places or use public transportation; and (3) 10% of an 8-hour workday the ability to remember locations and work-like procedures, understand and remember simple instructions, carry out simple instructions, make simple work decisions, ask simple questions or seek assistance, accept instructions and respond to criticism appropriately, interact appropriately with co-workers, maintain appropriate behavior, take normal precautions, or set goals or plans independently.  [*Id.* at 926-27].

The ALJ considered Dr. Cotgageorge's neuropsychological assessment and Mental Residual Function Capacity Form in determining Plaintiff's RFC.  The ALJ acknowledged that although Dr. Cotgageorge found ongoing symptoms of PTSD and some memory deficits that caused mild mental limitations, he found no evidence to support an organic mental disorder. [#11-2 at 25].  The ALJ also discredited the Mental Residual Function Capacity Form because it was inconsistent with the mild limitations found by Dr. Cotgageorge's neuropsychological assessment.  [*Id.*].  This was because Dr. Cotgageorge found a possible somatic component to Ms. Jacoby's ailments and that Ms. Jacoby performed inconsistently, suggesting an underrepresentation of her actual abilities.  *See* [*id.*].  For these reasons, the ALJ gave Dr. Cotgageorge's opinions little weight.  [*Id.*].

Ms. Jacoby challenges the ALJ's conclusion for several reasons.  First, she argues that the ALJ "impermissibly substitut[ed] her lay opinion for that of [Dr. Cotgageorge]," because no other specialist offered an opinion contrary to Dr. Cotgageorge and any inconsistencies in Dr. Cotgageorge's medical records is merely the ALJ's improper lay interpretation of the medical evidence.  [#14 at 17-18].  Further, Dr. Cotgageorge's examination revealed significant mental limitations that the ALJ improperly disregarded.  [*Id.* at 18-19].  Ms. Jacoby is correct that an ALJ

14

may not substitute her judgment for that of a medical expert based on the ALJ's own speculation or lay judgment. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *Neydavoud v. Astrue*, 830 F. Supp. 2d 907, 913 (C.D. Cal. 2011) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert." (internal brackets, quotations, and citation omitted)). But the ALJ provided a thorough discussion of the medical record and explained how Dr. Cotgageorge's severe restrictions in the Mental Residual Function Capacity Form were inconsistent with his earlier examination results of Ms. Jacoby that revealed only mild to moderate limitations. *See Barnhill-Stemley v. Colvin*, 607 F. App'x 811, 814-15 (10th Cir. 2015) ("Discrepancies between a treating physician's very restrictive functional assessment and that physician's contemporaneous treatment notes are a legitimate factor for discounting a medical opinion." (citing *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002)). Indeed, "[a]n ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Mullins v. Comm'r of Soc. Sec.*, No. 1:15-CV-104, 2015 WL 9854828, at *8 (S.D. Ohio Dec. 21, 2015) (internal quotations and citation omitted). And "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Asture*, 682 F.3d 1285, 1288 (10th Cir. 2012) (internal quotations and citations omitted).

Ms. Jacoby continues that the ALJ failed to explain "why Plaintiff's reporting of physical complaints, which the record demonstrates that she has and is consistent with the severe impairments found by the ALJ herself, undermines the assessed mental/cognitive limitations of Dr. Cotgageorge." [#14 at 18]. But the ALJ explained that the somatic component, coupled with Dr. Cotgageorge's observation that Ms. Jacoby performed inconsistently which likely underrepresented Ms. Jacoby's abilities, weighed against the more severe restrictions Dr.

15

Cotgageorge offered. *See* [#11-2 at 25]. The court finds no error in this reasoning. *See Golden-Schubert*, 773 F. App'x at 1050 (explaining that citation to inconsistent evidence is one way an ALJ can support her decision for affording little weight to a medical source opinion).

Next, Ms. Jacoby argues that the ALJ did not properly consider the factors applicable to weighing Dr. Cotgageorge's opinion. *See* [#14 at 18-19]. This is especially true when weighing medical source opinions, as an ALJ "'is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.'" *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). But such is not the case here. The ALJ rightfully noted the internal inconsistencies between Dr. Campbell's severe restrictions and Dr. Campbell's largely normal examination findings, such as normal gait, full strength in all extremities, and normal range of motion.

Ms. Jacoby continues that the ALJ impermissibly substituted her judgment for that of Dr. Campbell by concluding that Dr. Campbell's restrictions were not consistent with the medical record and were based in part on Ms. Jacoby's subjective complaints that the ALJ did not find fully credible. *See* [#13 at 18-19]. And the ALJ's conclusion that Dr. Campbell's restrictions appeared based in part on Ms. Jacoby's not fully credible subjective complaints was only one of several reasons for rejecting Dr. Campbell's restrictions—I find no error in this regard. *Cf. Thomas v. Barnhart*, 147 F. App'x 755, 759-60 (10th Cir. 2005) (reversing the ALJ's decision to afford little weight to a medical source opinion where the ALJ discounted the opinion "*solely* for the reason that it was based on Mrs. Thomas's responses" to the psychologist's examination, which "impermissibly substitutes [the ALJ's] judgment for that of [the psychologist].").

Finally, Ms. Jacoby argues that the ALJ erred by failing to contact Dr. Cotgageorge to clarify his opinions. *See* [#14 at 19-20]. The duty to develop the record "is limited to fully and

16

fairly developing the record as to material issues"; however, the burden lies with Ms. Jacoby to demonstrate that further development is required. *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (brackets and internal quotation marks omitted). But the ALJ is not required to contact a medical source for clarification unless the ALJ concludes the medical source's notes were inadequate. *See Maes v. Astrue*, 522 F.3d 1093, 1097-98 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation."). Such is not the case here. Indeed, the ALJ continued Ms. Jacoby's hearing to allow for Dr. Cotgageorge to evaluate Ms. Jacoby, and the ALJ adequately considered Dr. Cotgageorge's opinions in issuing her decision. *See id*; *cf. Branum*, 385 F.3d at 1271 (explaining that the ALJ is entitled to rely on the claimant's structure of her case, especially when represented by counsel at the hearing).

In sum, the court finds no error in the ALJ's assessment of Dr. Cotgageorge's opinions. The ALJ provided specific, legitimate reasons for her decision—nothing more is required. *See Oldham*, 509 F.3d at 1258 (holding that the ALJ's discussion of contrary, well-supported medical evidence provided a sufficient basis for giving a treating source opinion very little weight); *see also White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) ("Given the nature and limits of our review, and given as well the detailed reasons offered by the ALJ for rejecting [the medical source] opinion, we do not second-guess [the ALJ's] decision."). And "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo*, 682 F.3d at 1288. Ms. Jacoby's arguments to the contrary invite the court to reweigh the medical evidence—an undertaking strictly prohibited. *See*

*Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013). Thus, I find no error in the ALJ's decision.

## CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.

DATED: February 11, 2021

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge